

# THE ATTORNEY GENERAL
## OF TEXAS

JIM MATTOX
ATTORNEY GENERAL

September 9, 1988

Honorable Hugh Parmer
Chairman
Committee on Inter-
  governmental Relations
Texas State Senate
P. O. Box 12068
Austin, Texas    78711

Opinion No.  JM-952

Re:   Whether  certain  improve-
ments may  constitute  "regional
economic development facilities"
within the  meaning  of  article
1118x, V.T.C.S.   (RQ-1296)

Dear Senator Parmer:

You have asked whether

> drainage projects,  street and  other  infra-
> structural improvements, and library  facili-
> ties can  be  considered  'regional  economic
> development facilities' as defined in section
> (6C)(e), article  1118x, V.T.C.S.,  as  added
> by House  Bill  No.  2008,  70th  Legislative
> Session.

Article  1118x,  V.T.C.S.,  is  a  very  lengthy,  very
detailed statute  originally enacted  in  1973 to  help  the
state's urban areas remedy problems such as traffic  conges-
tion and air pollution which resulted in part from a lack of
mass transit  systems  in  those areas.   City of  Humble  v.
Metropolitan Transit Authority, 636 S.W.2d 484 (Tex. App.  -
Austin 1982, writ ref'd n.r.e.), appeal dismissed sub  nom.,
Archer v.  Metropolitan  Transit  Authority,  464  U.S.  802
(1983).  Generally, it  authorizes metropolitan areas,  upon
a vote  of  the  electorate,  to  establish  rapid  transit
authorities to be structured and operated in accordance with
the act.   Section  6C(e) was  added to the  statute by  Acts
1987, 70th Leg., ch. 804, at 2796,[1] which also amended other

---

        1.  The legislation  has an  interesting history.   The
content of House Bill No. 2008 originated under the style of
Senate Bill No. 1536,  introduced in the  Senate on May  18,
1987, by  Senator  Tejeda.   The  bill  was referred  to  the
                                      (Footnote Continued)

sections of the act to complement the section 6C(e) provisions.

Section 6C deals with acquisition of station or terminal complexes by an authority. Subsection (a) thereof declares such acquisitions to be "public and governmental functions, exercised for a public purpose, and matters of public necessity for public use and public benefit." Subsection (b) gives an authority power to acquire lands and interest in lands "adjacent or accessible to stations and other mass transit facilities, developed or to be developed by the

---

(Footnote Continued)
Senate Committee on Intergovernmental Relations, where it was taken up in public hearing on May 19. At that public hearing, Senator Tejeda explained that Senate Bill No. 1536 was to serve as a legislative vehicle in case some agreement could be worked out between San Antonio's transit authority ("VIA"), the San Antonio City Council, and the Bexar County delegation to the legislature. The bill would allow a 5-year, one-half-cent raise in the sales tax in San Antonio, subject to voter approval. The proceeds of that tax -- some $150 million -- would be dedicated to economic development projects undertaken in conjunction with mass transit facilities. Hearings on Senate Bill No. 1536 before the Senate Committee on Intergovernmental Relations, 70th Legislature (May 19, 1987).

The committee approved Senate Bill No. 1536 by a vote of 6-0, and the bill was passed unamended by the full Senate on May 22. The bill was then sent to the House of Representatives, where it was referred to the Committee on Urban Affairs. The House Committee on Urban Affairs considered Senate Bill No. 1536 in a formal meeting on May 27, 1987. There is no record of the discussion that took place at that meeting, but the members present did approve several important changes to the bill. See Bill Analysis, Tex. S.B. 1536, 70th Leg. (1987). The committee approved its substitute for Senate Bill No. 1536 by a vote of 12-0, and reported it back to the full house.

By this time, however, the regular session was drawing to a close, and there was a growing concern within the Bexar County delegation that Senate Bill No. 1536 was moving too slowly to ever reach the Governor's desk. A simple solution was found in House Bill No. 2008, which was then sitting in the Senate. House Bill No. 2008 was originally intended to
(Footnote Continued)

authority" and to lease or transfer them to others subject to certain restrictions. Subsection (c) provides that any such acquisitions must be part of, or contained within, a complex needed for successful operation of the system and designated as such by an approved "comprehensive transit plan." Subsection (d) states that a station or terminal complex "shall include adequate provisions for the transfer of passengers," and "may include provisions for commercial, residential, recreational, institutional, and industrial facilities, except that no land or interest in land that is more than 1,500 feet in distance from the center point of the complex or that has not been included in a master plan of development adopted by the board may be acquired for the facilities." V.T.C.S. art. 1118x, § 6C(d). (Emphasis added.)

In addition, subsection (e) of section 6C, the focus of your question, authorizes, in a station or terminal complex "of an authority created before January 1, 1980, in which the principal city had a population of less than 1,200,000" according to the most recent census, the inclusion of "regional economic development facilities" if approved by both the board of the authority and the governing body of the principal city. "Regional economic development facilities" are defined by the subsection as

> facilities which will lead to the creation of
> new jobs, maintain existing jobs or generally
> improve the conditions under which a local

---

(Footnote Continued)
create an economic development finance agency in Corpus Christi. It passed the House on May 6, but had become stalled in the Senate -- reportedly due to the ill health of Senator Truan. On June 1, on motion of Senator Armbrister, the Senate suspended the rules and took up House Bill No. 2008. Senator Tejeda immediately offered an amendment to strike all below the enacting clause and substitute therefor the language of Senate Bill No. 1536, as amended by the House. The amendment was approved by a viva voce vote, and after one further amendment, the bill was passed by a vote of 31-0. See Senate Journal of Texas, 70th Leg., Reg. Sess., 2643-48 (1987). The bill was sent to the House of Representatives that same day. The House refused to concur with the Senate amendment, but a conference committee resolved the disagreement, and both houses managed to approve the conference report before the close of the legislative day.

> economy may prosper,  and which include,  but are not limited to, facilities used primarily for conventions, entertainment, special events, professional and amateur sports,  or other lawful purposes.[2]

The remainder of subsection (e) deals with the power of the authority to institute a tax to pay for such facilities, the mechanics of doing so, and the limitations upon the use of the funds so raised, and with the type of agreements the authority might make to implement the realization of "regional economic development facilities."

Although the power to include regional economic development facilities within a station or terminal complex is bestowed upon the authority by a separate subsection of section 6C, such facilities are only authorized if located "within" such a station or complex.  Consequently, drainage projects, street and other infrastructural improvements, or library facilities located outside the permitted expanse of the station or terminal complex, could not be considered "regional economic development facilities" within the meaning of the statute, whether or not they would "lead to the creation of new jobs, maintain existing jobs or generally improve the conditions under which a local economy may prosper."

Inasmuch as subsection (d) limits the expanse of such a station or terminal complex acquired for commercial, residential, recreational, institutional or industrial facilities to not more than 500 yards from the center point of the complex, the opportunity for drainage projects, street and other infrastructural improvements, or library facilities to qualify as regional economic development facilities is accordingly limited, but we cannot say that as a matter of law they could not be considered as such if they were located within the complex.  Each situation will depend on its own particular facts.  The criteria are that regional economic development facilities:

> (1) must be located at a station or terminal complex;

---

2.    See Tex. Const. art. III, § 52-a added November 3, 1987.  Because your question involves only matters of statutory construction, we do not consider constitutional provisions affecting the legislation.

(2) must be aimed at providing jobs or improving economic conditions generally;

(3) must be dedicated to lawful purposes; and

(4) must meet statutory requirements for funding and approval.

## S U M M A R Y

To qualify as "regional economic development facilities" pursuant to section 6C(e) of article 1118x, V.T.C.S., such facilities must be located at a station or terminal complex, must be aimed at providing jobs or improving economic conditions generally, must be dedicated to lawful purposes, and must meet statutory requirements for funding and approval. Whether a particular facility qualifies will depend upon the facts peculiar to it.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Bruce Youngblood
Assistant Attorney General